**IN THE COURT OF APPEALS OF IOWA**

No. 22-0647
Filed June 29, 2022

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**J.H., Mother,**
    Appellant,

**T.W., Father,**
    Appellant.
_____


Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.


A mother and father appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


Daniel J. McGinn of McGinn, Springer & Noethe P.L.C., Council Bluffs, for appellant mother.

Whitney A. Estwick of Estwick Law, L.L.C., Council Bluffs, for appellant father.

Amy Elizabeth Garreans of Garreans Law L.L.C., Council Bluffs, for appellee intervenor.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Roberta J. Megel of the State Public Defender Office, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This family came to the attention of the Iowa Department of Human Services (DHS) shortly after the child's birth. At birth, the child tested positive for marijuana. While still in the hospital following delivery, hospital staff witnessed a domestic altercation between the mother and father while the child was present. The altercation caused the father to be removed and banned from the hospital. After the mother made suicidal and other concerning comments, the mother was admitted to the hospital for psychiatric evaluation. The child was removed from the parents' custody, placed in DHS custody, and placed with a foster family. Soon after, the child was adjudicated to be a child in need of assistance (CINA).

As the CINA case continued, domestic-abuse concerns persisted. About two months after the child's removal, the father was arrested for assaulting the mother. Due to the domestic-abuse concerns, the court required the father to participate in Iowa Domestic Abuse Program (IDAP) classes. Although he started the classes, he was kicked out due to excessive absences.

Substance-abuse issues also caused concern. The father tested positive for marijuana and PCP. He failed to provide additional samples for drug testing. One service provider noted that, at the start of a visit with the child, the father's apartment "reeked" of marijuana.

Mental-health issues also plagued the parents. The mother was required to obtain an assessment and follow through with treatment recommendations, but she failed to participate consistently. The father also has significant mental-health issues, but he neglected to take his prescribed medication and generally failed to address his issues.

Visitation also proved to be a challenge for the parents. After the child was removed from the parents' custody and the mother was discharged from the hospital, the mother moved to the east coast to live with the maternal grandmother. The distance created by the move resulted in the mother not being provided in-person visits. The mother was encouraged to return to Iowa to have in-person visits, but she declined. Video visits were set up as an alternative, but the mother only minimally participated in them. When she did participate, she was not engaged in the visit and would often need prompting to interact with the child. The father exercised one visit each week, but he declined a second when it was offered. He also failed to consistently confirm or attend his scheduled visits. Visits were moved from his home at times because his home was unsafe for the child. Service providers noted that the father would need to be redirected to engage with the child in age-appropriate manners, and he would need reminders to change the child's diaper and feed the child. The father largely relied on the foster family to provide supplies for the child during his visits, even though he had been informed of his obligation to bring supplies.

The State filed termination-of-parental-rights actions against the parents. Following a hearing, the juvenile court terminated both parents' rights to the child pursuant to Iowa Code section 232.116(1)(e) and (h). Both parents appeal.

I. **Standard and Scope of Review**

We review termination-of-parental-rights matters de novo.[1] We give weight to the juvenile court's findings of fact and credibility determinations, but we are not

---

[1] *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020).

bound by them.[2]  Clear and convincing evidence must support the grounds for termination.[3]  "We generally apply a three-step analysis to review termination of parental rights.  First, we consider whether there are statutory grounds for termination.  Second, we determine whether termination is in the best interests of the child.  Third, we consider whether we should exercise any of the permissive grounds for termination."[4]  We will not address a step if it is not raised by the parent.[5]

## II.    The Mother's Appeal

The mother mentions several concepts in her petition on appeal, but she neglected to separate the concepts into separate issues.  As a result, we are uncertain of the issues she raises, but we will do our best to try to identify them.

### A.    Statutory Grounds

The mother may be arguing that the State failed to prove a statutory ground for termination.  To the extent the mother is raising this issue, it is not preserved for our review.  While the mother contested termination at the hearing, she did so by arguing for dismissal of the petition based on her contention that the State failed to provide reasonable efforts for reunification between her and the child.  She did not argue that the State failed to meet its burden in proving the statutory grounds.  Issues must be raised in the lower court to preserve them for appellate review.[6]

---

[2] *Z.P.*, 948 N.W.2d at 522–23.

[3] *Z.P.*, 948 N.W.2d at 523.

[4] *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022) (citing *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018)).

[5] *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

[6] *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

As the mother did not raise this issue, it is not preserved for our review.[7] Additionally, as the mother did not develop an argument in her brief as to how the State failed to meet its burden to prove a statutory ground for termination, the mother has also waived the issue.[8]  That said, following our de novo review of the record, we find the statutory grounds for termination of the mother's rights have been satisfied.

### B.      Reasonable Efforts

The main thrust of the mother's argument, both to the juvenile court and to us, is that her rights should not be terminated because the State failed to provide reasonable efforts to reunify her with her child.  "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."[9]   What constitutes reasonable efforts varies based on the requirements of each individual case, but the focus is generally on providing services to improve parenting while balancing reunification efforts with protecting the child.[10]  While the DHS must make reasonable efforts toward reunification, it is the parents' responsibility to object if they claim the services are inadequate so that changes may be made early on in the process.[11]  "In general, if a parent fails

---

[7] *See Meier*, 641 N.W.2d at 537.

[8] *See In re W.J.*, No. 21-1991, 2022 WL 610559, at *1 (Iowa Ct. App. Mar. 2, 2022) (finding a parent waives an issue by making only a "conclusory statement unaccompanied by factual arguments, legal arguments, legal citations, or references to the record").

[9] *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (quoting *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000)).

[10] *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

[11] *L.M.*, 904 N.W.2d at 839–40.

to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."[12]

During two CINA hearings, the mother requested funding to assist in returning to Iowa and for housing when she returned. We find the mother's reasonable-efforts challenges to be timely. Even so, the challenges fail on their merits. Unrebutted evidence shows that funding was not available to accommodate some of the mother's requests for services. The State "need not search for unavailable services" in providing reasonable efforts.[13] Further, there was testimony that the DHS offered assistance to help the mother find housing in Iowa, but the mother opted not to take advantage of such assistance to facilitate her return to Iowa. We find the mother's failure to achieve reunification was a result of her failure to fully engage in and respond to services, rather than a lack of reasonable efforts by the DHS. Accordingly, we find the mother's claim regarding reasonable efforts fails, and we affirm the termination of her parental rights.

## III. The Father's Appeal

The father contends the State failed to prove the statutory grounds for termination and that a permissive exception should preclude the termination of his rights. He also argues that the termination petition should have been dismissed because the State did not provide reasonable efforts to reunify him with the child.

---

[12] *L.M.*, 904 N.W.2d at 840 (quoting *C.H.*, 652 N.W.2d at 148).
[13] *C.H.*, 652 N.W.2d at 147.

### A.     Statutory Grounds

When, as here, the juvenile court terminates a parent's rights on more than one statutory ground, we may affirm the decision on any ground supported by the record.[14]  We exercise our discretion to focus on paragraph (h).

Iowa Code section 232.116(1)(h) permits termination of a parent's rights upon clear and convincing proof of four elements: (1) the child is three years old or younger; (2) the child has been adjudicated to be a CINA; (3) the child has been removed from the parent's physical custody for, as applicable here, at least six of the last twelve months; and (4) the child cannot be returned to the parent's custody at the time of the termination hearing.[15]  The father only contests the fourth element—that the child could not be returned to his custody at the time of the termination hearing.[16]

The record shows that the father has unresolved domestic-violence concerns and, at the time of the termination hearing, he had not completed the required IDAP classes.  Further, the father continued to have untreated mental-health concerns.  He admittedly did not take medication prescribed for treatment of his diagnosed condition, and he failed to obtain an assessment to determine whether he could safely parent while unmedicated.  Also, during in-person visits, service providers noted the father's inability to recognize what was age appropriate for the child.  On our de novo review of the record, we find that the child could not

---

[14] *In re M.W.*, 876 N.W.2d 212, 222 (Iowa 2016) (quoting *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012)).
[15] Iowa Code § 232.116(1)(h).
[16] *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the fourth element's reference to "at the present time" to mean at the time of the termination hearing).

be returned safely to the father's custody at the time of the termination hearing, so the State proved a statutory ground for termination.

### B. Permissive Exception

Iowa Code section 232.116(3) provides a number of exceptions to termination. The exceptions are permissive, not mandatory, and the parent asserting an exception has the burden to prove its applicability.[17] The father relies on the exception under section 232.116(3)(c), which allows a court to deny termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The father argues that he shares a strong bond with the child such that termination of his rights would be detrimental to the child.

As a preliminary matter, we note that the father has not preserved error on this claim, as he failed to make this claim to the juvenile court. As he did not raise this issue below, he did not preserve it for our review.[18] Although not preserved for our review, following our de novo review, we conclude the father failed to meet his burden of establishing the applicability of this exception. The child has never been in the father's custody, the father has limited parenting skills, the child is doing well in the child's current placement, and there is no evidence of a strong bond between the father and the child. We find the exception inapplicable.

### C. Reasonable Efforts

The father argued to the juvenile court and vaguely argues on appeal that the State failed to make reasonable efforts towards reunification. At one hearing

---

[17] *A.S.*, 906 N.W.2d at 475–76.
[18] *See Meier*, 641 N.W.2d at 537.

the father requested assistance with paying for the IDAP classes and additional visits with the child.

As to the request for IDAP funding assistance, at the same hearing during which the request was made, it was discussed that there were no available funds to aid the father in paying for the classes. Nevertheless, the court still required the father to attend the classes because he was employed. We find no lack of reasonable efforts to provide funding that was not available.[19]

In terms of visits, the father was offered one visit per week, and, when offered an additional visit each week, he declined it. We find no lack of reasonable efforts for the failure to give the father additional visits when he declined the additional visits offered.

## IV. Conclusion

We are not persuaded that the juvenile court acted improperly by terminating the parents' parental rights. As a result, we affirm termination of both parents' rights to the child.

**AFFIRMED ON BOTH APPEALS.**

---

[19] *See C.H.,* 652 N.W.2d at 147 ("[I]n making reasonable efforts to provide services, the State need not search for unavailable services.").